Denning, Respondent, vs. Denning, Appellant.

*February 7—March 5, 1935.*

For the appellant there were briefs by *J. Henry Bennett* of Viroqua, and oral argument by *W. H. Farnsworth* of Portage.

*L. H. Bancroft* of Richland Center, for the respondent.

Rosenberry, C. J. We have examined the unusual record in this case with much care. We shall not attempt to state all of the facts, but only enough to indicate the basis of our conclusion. Upon the trial the plaintiff in unmeasured terms testified to the circumstances upon which she based her claim of cruel and inhuman treatment. It seems that the parties were married on August 11, 1904; that the plaintiff had started three prior divorce actions, the first when her eldest

daughter, Edith, was three years of age, she being at the time of the trial twenty-seven years old. Another suit was begun and discontinued. A third suit was begun which went to trial, and the plaintiff was denied a divorce in 1925.

It appears that the plaintiff had difficulty not only with her husband but with her daughters. She at times engaged them in physical combat, was accustomed to call her husband and her daughters, vile, obscene names, and accused them of serious misconduct. It appears since the divorce action which was decided February 21, 1925, the husband has been away from home the greater part of the time. He was a traveling salesman representing a grocery house. At one time he was absent upwards of sixteen months, and was absent for several months a number of different times. He received $50 a week by way of check from his employer, and a considerable proportion of these checks was sent to and received by the plaintiff to 1927. Upon her direct examination the plaintiff testified to a number of occasions when the defendant had used vile and obscene language in regard to her, and had inflicted physical violence upon her. On cross-examination she was asked to testify who was present, and in a number of instances gave the names of witnesses. These witnesses failed with one or two exceptions to corroborate her, and a careful perusal of the entire record leaves us with a very clear conviction that the plaintiff was a woman of high and ungovernable temper, had for many years persisted in a course of nagging conduct, was unreasonable, quarrelsome, desirous of procuring a divorce from her husband, created scenes for the purpose of leading her husband to do something which would afford a basis for an action for divorce, and was lacking in parental as well as wifely affection.

The record discloses that the plaintiff was accustomed to consult the judge who tried the case, and it seems quite probable that the mind of the court was influenced by knowledge of circumstances not within the record. Trial was begun on the 8th day of June, 1933, and completed on the 16th day of

August, 1934. In the findings it is recited that on the 20th day of August, 1934, four days after the trial closed, the defendant entered a plea of *nolo contendere* to a charge of assault and battery upon the plaintiff. Because of this and other circumstances disclosed by the record the findings of the trial court are subject to close scrutiny.

One circumstance is that in the findings of fact the court said:

"That for many years the defendant has been guilty of cruel and inhuman treatment of the plaintiff, practiced by means of personal violence and without such means. That such cruel and inhuman treatment has continued off and on for the past twenty years. That the conduct of the defendant has been such as to naturally cause great mental suffering to the plaintiff and has impaired the plaintiff's health and has caused her to become nervous and sick, so that further efforts to perform the duties of the marriage state would be dangerous, and would render further impairment of her health probable."

It appears almost without dispute that the defendant has not been in his home to exceed two months in the last eight years; that the parties have not cohabited since long prior to the divorce action of 1925. Under these circumstances, any impairment of her health can scarcely be due to the conduct of the husband. The evidence is convincing that she neither desired nor tolerated the society of her husband.

We have the highest respect for the learned judge who tried this case, but it is almost impossible for the human mind to disabuse itself of impressions received through a term of years in a controversy such as existed between the plaintiff and the defendant.

On cross-examination, although the plaintiff had testified to a most unusual set of facts with respect to the conduct of the defendant, she stated:

"Generally Mr. Denning kept away from me, and kept away from home for the last eight years. He talked to me very little the last few years except to call me names. There

was never anybody present at our house when he struck me or called me names except my two girls, and his son-in-law, and they heard it if he called me names."

She testified to matters long prior to the decision of the divorce case tried in 1925. Her daughters and her son-in-law not only did not corroborate the plaintiff, but with one or two exceptions testified that the father had never abused or struck the plaintiff. Upon the whole record it is considered the findings of fact are against the great weight and clear preponderance of the evidence. Nor did the defendant establish his counter-claim in such a way as enables this court to say that the trial court was in error in denying the defendant a divorce.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint and counter-claim. No costs to be taxed except the defendant shall pay clerk's fees in this court.